# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-99-00385-CR

**Willie James Winn, III, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF FAYETTE COUNTY, 155TH JUDICIAL DISTRICT
### NO. 99R-029, HONORABLE DAN R. BECK, JUDGE PRESIDING

A jury found appellant Willie James Winn, III, guilty of possessing more than 400 grams of cocaine. *See* Tex. Health & Safety Code Ann. § 481.115(a), (f) (West Supp. 2000). The district court assessed punishment at imprisonment for thirty years. Winn challenges the legal and factual sufficiency of the evidence to sustain the jury's verdict. We will affirm.

On February 3, 1999, Fayette County Deputy Sheriff Jeffrey Head received a report that a white Suburban had driven away from a fast-food restaurant/gas station in LaGrange without paying for gasoline. Shortly thereafter, Head saw and stopped a Suburban matching the description of the suspect vehicle. The Suburban was registered to and driven by Quincy Lee Wray.[1] Winn was sitting in the front passenger seat. Also in the vehicle were three women and an infant. Wray told

---

[1] Codefendant Wray's appeal is before us in cause number 03-99-00384-CR.

Head that he had mistakenly believed that one of the women had paid for the gas, and agreed to return to the station.

Head spoke to Winn at the gas station while Wray went inside to pay. Winn told the officer that he and his companions were on their way back to Austin, but that he did not know where they had been. Asked by defense counsel if this was Winn's way of saying that he did not understand the officer's question, Head testified that he believed that Winn understood the question but was not being candid in his answer.

After Wray paid for the gasoline and that matter was considered closed, Head asked Wray for permission to search the Suburban. Wray refused to consent to the search. Head then told Wray that he and the others were free to leave, but that the Suburban was to be detained pending the arrival of a drug-sniffing dog. Wray, Winn, and their companions sat in the Suburban and smoked while waiting for the dog. Head noticed "a lot of movement inside the vehicle" during this time.

When the dog arrived, Winn and his companions initially refused to leave the Suburban. They finally relented, and the dog was walked around the outside of the vehicle. The dog alerted by the front door, indicating that he smelled narcotics. Head left to get a search warrant while another officer sat with the suspects inside the restaurant. When Head returned with the warrant, this officer heard Wray tell one of the women "he was fixing to go to jail."

Head testified that Wray activated the Suburban's alarm system during his absence and refused to disarm it after being served with the search warrant. Officers used tools to enter the vehicle. The drug dog was placed inside and immediately alerted on the center console. Head opened the console and removed "an area that had cassette tapes and everything else." At the bottom

2

of the console, Head found "a large brown bundle, a small plastic bag containing marihuana, and also a marihuana cigar as well as a cell phone, a box of ammunition and I believe a box of cigars." The bundle was shown to contain over 500 grams of cocaine in a plastic zip bag. The bag had been wrapped in sheets of fabric softener, then sealed in plastic, and finally covered with brown masking tape. A sack containing brown masking tape, plastic wrap, fabric softeners, and scissors was found inside the Suburban. Other items seized during the search included cell phones, a pager, and a stun gun. Wray was carrying $979 in cash when arrested; Winn had $220.

Winn testified that he accepted Wray's invitation to go with him and the women to Astroworld and the beach. They left Austin at midnight, stopping at a motel somewhere in the Houston area around 4:00 a.m. Winn said he was awakened at 2:00 p.m. by Wray pounding on his door. Wray told Winn he was angry because the women had taken the Suburban, ostensibly to go to the grocery store, but had been gone several hours. When the women returned to the motel, Wray announced that the trip was off and that they were returning to Austin. Winn testified that the only stop they made after leaving the motel was to eat and buy gas in LaGrange. Winn acknowledged having cigarette papers in his pocket when arrested and admitted that he occasionally smoked marihuana, but he denied having any knowledge of the marihuana and cocaine that was found in the Suburban.

Wray also testified, and his description of the trip was similar to Winn's. Wray claimed he did not know that there was contraband in his vehicle. He said that the women had taken the Suburban for five hours while in Houston, and suggested that the drugs had been purchased by them during that time.

3

The test for the legal sufficiency of the evidence to support a criminal conviction is whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Griffin v. State*, 614 S.W.2d 155, 158-59 (Tex. Crim. App. 1981). In order to prove unlawful possession of a controlled substance, the State must prove that the accused exercised care, control, and management of the substance, and that the accused knew the substance was contraband. *See Martin v. State*, 753 S.W.2d 384, 387 (Tex. Crim. App. 1987); *Hackleman v. State*, 919 S.W.2d 440, 444 (Tex. App.—Austin 1996, pet. ref'd, untimely filed). When the accused is not in exclusive control of the place the contraband is found, the State must prove independent facts and circumstances affirmatively linking the accused to the contraband. *See Cude v. State*, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986). "Affirmative links" is a shorthand expression of what the State must prove to establish that the accused knowingly or intentionally possessed the contraband. *See Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). The required affirmative links can be proven by direct or circumstantial evidence, but the links do not need to be so strong that they exclude every other outstanding reasonable hypothesis. *See id.* at 747-48. All that is required is that the accused's connection with the drug be more than fortuitous. *See id.* at 747.

A defendant's mere presence at a place where contraband is being used or possessed by others does not link him to the contraband. *See Martin*, 753 S.W.2d at 387. While many factors have been identified by the courts as being relevant in determining whether a defendant is affirmatively linked to contraband, the number of factors present in any particular case is less

4

important that the logical force the factors have, alone or in combination, in establishing the elements of the offense. *See Whitworth v. State*, 808 S.W.2d 566, 569 (Tex. App.—Austin 1991, pet. ref'd).

Winn did not own and was not driving the Suburban. Although he was sitting in close proximity to the contraband, the drugs were not in plain view but were hidden at the bottom of the console. Winn had no drugs on his person, there was no evidence that he or his companions were intoxicated, and he made no statements linking him to the contraband. On the other hand, Winn's behavior following the stop was suspicious in several respects. He claimed to have no idea where he and his traveling companions had been. While waiting for the drug dog to arrive, Winn and the other occupants of the Suburban remained in the vehicle, moving about and smoking with the windows closed, from which an inference could be drawn that they were attempting to hide the drugs and disguise their odor. And after the dog arrived, they initially refused to exit the vehicle. Also suggesting a link between Winn and the contraband was his possession of rolling papers which he admitted he used to smoke marihuana. The material used to wrap the cocaine, including sheets of fabric softener, were found in the Suburban. Finally, Winn and Wray testified that five adults and an infant had gone to Houston to visit an amusement park and the beach, but the police found no luggage in the Suburban.

Viewing the evidence in the light most favorable to the verdict, we conclude that Winn's connection to the cocaine was shown to be more than merely fortuitous. That is, a rational trier of fact could find beyond a reasonable doubt that Winn exercised care, custody, or control over the cocaine knowing that it was contraband. Point of error one is overruled.

In a factual sufficiency review, the evidence is not viewed in the light most favorable to the verdict. Instead, all the evidence is considered equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *See Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). A factual sufficiency review asks whether a neutral review of all the evidence, both for and against the finding of guilt, demonstrates that the proof of guilt is so obviously weak or so greatly outweighed by contrary proof as to undermine confidence in the jury's determination. *See Johnson v. State*, No. 1915-98, slip op. at 18 (Tex. Crim. App. Feb. 9, 2000). We must maintain appropriate deference to the jury's verdict by finding error only when the record clearly indicates that the verdict is wrong and manifestly unjust. *See id.*, slip op. at 13; *Reina v. State*, 940 S.W.2d 770, 773 (Tex. App.—Austin 1997, pet. ref'd).

The jury is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony, and may accept or reject all or any part of the evidence. *See Bonham v. State*, 680 S.W.2d 815, 819 (Tex. Crim. App. 1984); *Castellano v. State*, 810 S.W.2d 800, 807 (Tex. App.—Austin 1991, no pet.); Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979). We are not free to reweigh the evidence and set aside a verdict merely because we feel that a different result is more reasonable. *See Clewis v. State*, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996); *Reina*, 940 S.W.2d at 773. Considering all the evidence before us, and giving due deference to the jury's verdict, we conclude that the verdict is not manifestly unjust. Point of error two is overruled.

The district court's judgment erroneously states that Winn waived trial by jury and pleaded guilty. The judgment is modified to reflect that Winn was convicted by a jury following a plea of not guilty. As modified, the judgment of conviction is affirmed.

_____

Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Modified and, as Modified, Affirmed

Filed:   September 21, 2000

Do Not Publish