Steve H. TAYLOR, Appellant,

v.

The STATE of Texas, Appellee.

No. 59895.

Court of Criminal Appeals of Texas, Panel No. 1.

Feb. 25, 1981.

Stan Brown, Abilene, for appellant.

Lynn R. Ingalsbe, Dist. Atty., Abilene, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and ROBERTS and ODOM, JJ.

## OPINION

ONION, Presiding Judge.

This appeal is taken from four judgments of conviction for delivery of marihuana, in which the trials on the four indictments were consolidated upon appellant's motion. Also consolidated and jointly tried was a delivery of marihuana case against Darcy Taylor, appellant's wife, which cause is not in issue in this appeal. The jury assessed punishment in each of appellant's cases at ten (10) years' confinement. The same issues are raised in all four cases.

The record reflects that Roger Cox, an officer with the Abilene Police Department, was working in an undercover capacity from February to August of 1977, attempting to infiltrate the illegal drug trade in the Abilene area. Cox testified that he worked with an informant who would introduce him to drug users and dealers. The informant was not to participate in any actual drug transactions. Cox was introduced to appellant and his wife on April 6, 1977, by the informant, under the guise of being the informant's cousin. At the time of this first meeting with the Taylors at their mobile home, Cox observed several bags of marihuana on a table. Appellant asked if Cox and the informant would like to smoke some and Cox said yes. Cox sat with the other three and he and the informant simulated smoking marihuana. As Cox and the informant were getting up to leave, appellant asked if Cox would like to buy a bag of marihuana. Cox declined, believing that the $25.00 asking price was too high, and also because he did not have that much money with him. He further testified that he had not wanted to buy marihuana with the informant present.

Cox and the informant then left, but Cox returned alone to appellant's trailer later that night. He was asked inside by appellant, who asked if Cox wanted to buy some marihuana now. Cox again said the price was too high, but after a simulated test smoking, finally bought one bag for $25.00. Later that night Cox turned the marihuana over to another officer to be analyzed.

Cox testified to having bought marihuana from appellant on three other occasions in April 1977 under similar circumstances. These purchases took place on April 16, 17, and 25. On each occasion, Cox went alone to appellant's trailer, and appellant each time began the conversation by asking if Cox was there to buy marihuana. Cox would say yes, and the sale would be made. After receiving the marihuana and paying for it, Cox would arrange to turn it over to another officer the same day. On cross-examination, Cox denied ever having first brought up the question of buying marihuana, on any of the four occasions. He also denied that appellant was ever reluctant to sell marihuana to him, and denied that appellant only did so because Cox continually begged and harassed him.

Outside the presence of the jury, Cox testified that the name of the informant who had introduced him to the Taylors was Johnny Sams. Sams had been introduced to Cox on April 4, 1977, by Abilene narcotics officer Wayne Bailey. Sams was 15 or 16 years old at the time. Cox denied ever turning over to Sams any of the marihuana he had bought from appellant. The trial court refused to allow defense counsel to question Cox in the presence of the jury about the informant Sams.

The State then called the officer to whom Cox had turned over his marihuana purchases, in order to complete the chain of custody. This connected the exhibits to the testimony of the State's chemist, whose opinion was that each contained in excess of one-quarter ounce of marihuana. One of the officers, Wayne Bailey, further testified outside the presence of the jury that he had introduced Cox to Sams shortly before Cox made his first purchase from appellant. Sams had been 16 at the time, and had voluntarily agreed to help the police make undercover "buys" from Abilene area drug dealers in exchange for dismissal of a pending marihuana charge against him. Bailey admitted loaning Sams some money, which was never repaid, and making arrangements with Cox to pay for Sams' meals and other unspecified expenses. Bailey denied, however, that Sams was actually paid for his assistance. Appellant's request to allow the jury to hear this testimony was also denied. Also testifying outside the jury's presence as to the relationship between Sams and the police department was Sergeant Larry Faulks, supervisor of vice and narcotics operations of the Abilene Police Department. Faulks was aware of Sams' juvenile status and pending case, and stated that he had approved the use of Sams in facilitating the setting up of drug "buys." As in the two previous instances, appellant's offer to have this testimony proven up before the jury was denied.

After the State rested, appellant called several witnesses in an apparent attempt to set up an entrapment defense. James Stotts testified that he had been present during the April 6th and 16th transactions between Cox and appellant. He stated that on both occasions Cox had initiated the discussions about appellant selling marihuana to him, and that appellant had been very reluctant to do so. Finally, after Cox's allegedly repeated requests and pleadings, appellant sold him marihuana on both occasions. Appellant's brother, Ed Taylor, gave similar testimony as to the April 16th and 25th transactions which he had witnessed.

Appellant and his wife, Darcy Taylor, both testified that Cox had pleaded with

and harassed appellant on each of the four occasions. They stated that but for this, appellant never would have sold marihuana to Cox. They also testified that as to the transactions of April 6th and 16th, the "informant," apparently referring to Sams, had been with Cox when the purchases were made. This was in direct conflict with Cox's testimony that he had been alone during all of his purchases from appellant.

█ Appellant's first ground of error alleges that the trial court committed reversible error in refusing to grant appellant's first motion for continuance, and in denying his motion for new trial based on this ground. The State in its brief contends that the ground of error is not in compliance with Article 40.09, § 9, V.A.C.C.P., because it complains both of the refusal of the motion for continuance and the overruling of the motion for new trial. This conclusion is mistaken. The only means of preserving error in the overruling of a motion for continuance due to an absent witness is a motion for new trial. *Baker v. State*, 467 S.W.2d 428 (Tex.Cr.App.1971). Thus, appellant's grievance under this ground of error is that the trial court erred in denying him a continuance, and wrongly refused to correct the error in that the motion for new trial also was overruled. The ground of error is not multifarious, or as the State would have it, "duplicitous."

The continuance motion, bearing a file mark of January 11, 1978, the first day of trial, requested a continuance based on the absence of Johnny Sams, who was not in court despite allegedly having been served with a subpoena on December 13, 1977 to appear on January 9, 1978. The record does not contain a copy of any such subpoena, nor the officer's return thereon. The motion itself appears to be in compliance with Article 29.06, V.A.C.C.P., and alleges that the appellant expected to prove by Sams' testimony that Sams had been compelled to work for officer Cox, that Cox had given Sams marihuana for his services, and that Cox had induced appellant to sell marihuana to him "by continually begging and ha-

rassing" appellant. The copy of the docket sheet which appears in the record states that a hearing was held on the motion on January 11, 1978, as well as on appellant's application for attachment of Sams, which had been filed the same day. The docket entry further states that these motions were denied "as more fully set out in record." The second page of the motion for continuance shows that the word "Granted" has been marked through, leaving the words, "Refused, to which the defendant excepts," below which appears the trial court's signature. At the bottom of the application for attachment appears the handwritten notation, "1/11/78 Application for attachment denied for the reasons more fully set out in the record on a hearing this date" with the trial court's signature below. Thorough examination of the transcription of the court reporter's notes, however, fails to unearth any record of any such "hearing."

■ The allegations in a motion for continuance, though they must be sworn, are not self-proving. *Rollins v. State*, 488 S.W.2d 429 (Tex.Cr.App.1972). The docket entries and endorsements on the relevant documents indicate that a hearing was held thereon and evidence presented. Determination of such a motion is vested in the sound discretion of the trial court, subject to review for abuse of such discretion. *Corley v. State*, 582 S.W.2d 815 (Tex.Cr.App. 1979), cert. denied 444 U.S. 919, 100 S.Ct. 238, 62 L.Ed.2d 176 (1979). Appellant in essence asks us to find an abuse of discretion in the trial court's action, when he has not provided us with a bill of exception or a record of the hearing which led to the ruling. We decline to review his contention. Article 40.09, § 5, V.A.C.C.P.

■ Similarly, with regard to the motion for new trial, the issue simply is not preserved for review. After the return on January 12, 1978 of the verdicts finding appellant guilty in all four cases, and those returned on January 13 assessing punishment, the record shows that leave was granted appellant for the filing of an out-of-time motion for new trial, which was

made applicable to all four causes. This motion was filed on March 15, 1978. The motion was overruled, but the record does not indicate when this occurred. On July 28, 1978, an order was entered setting aside the sentences in all four cases because they had not been properly pronounced. In response to this order, a new "original" motion for new trial was filed by appellant on the same date, and overruled on the same date.

■ Neither of the two motions is accompanied by an affidavit from Sams that he actually would testify as alleged in the motion for continuance. There was no showing under oath to this effect from any other source. It is not enough merely to file a sworn motion for continuance or new trial based on an absent witness. There must be some showing under oath to substantiate the allegations as to the expected testimony. *McCloud v. State*, 494 S.W.2d 888, 890–91 (Tex.Cr.App.1973), and cases cited therein. There was no abuse of discretion in the trial court's overruling of the motions. The first ground of error is overruled.

■ Appellant's second ground of error complains of the trial court's failure to allow appellant to testify before the jury regarding his application for probation, and of the trial court's refusal to instruct the jury in its charges on punishment as to appellant's probation eligibility. The underlying issue is whether appellant's 1968 Minnesota conviction for the felony offense of aggravated forgery, which had been set aside in a 1971 "Order of Discharge and Restoration of Civil Rights," rendered him ineligible to be recommended by the jury for probation. A hearing outside the presence of the jury was held on this issue, at the conclusion of which the trial court ruled that the jury would not be charged on the law of probation nor would appellant's counsel be allowed to allude to probation in final argument on punishment. Timely objections were made to these rulings.

Appellant's position is that the order, discharging him from penal control, restoring all of his civil rights, and setting aside and

nullifying his conviction, is the equivalent of a full pardon. As such, he argues, it wipes out the conviction as if it had never happened. There is room to doubt whether this document has the same effect as a full pardon, but for purposes of argument we shall grant it such status. For even if it were a full pardon, appellant's contention still would be without merit.

In *Watkins v. State*, 572 S.W.2d 339 (Tex. Cr.App.1978), defendant therein complained, inter alia, of the trial court's refusal to submit to the jury the issue of his right to probation. It appeared that he had had two prior federal felony convictions, both of which had been set aside by "full presidential pardons." We held that such pardons, absent an express finding on their face of subsequent proof of Watkins' innocence, did not "wipe the slate clean" as far as probation eligibility. 572 S.W.2d at 343. The order in issue in the instant case does not purport to exonerate appellant from the prior finding of guilt. Thus, *Watkins* controls. Appellant's second ground of error is overruled.

Appellant's third ground of error raises the contention that the trial court wrongly excluded, over objection, testimony favorable to appellant in establishing his entrapment defense. He argues that the testimony of officer Bailey, given outside the presence of the jury, that the informant Johnny Sams had been previously arrested, that he was a juvenile, and that there was an agreement for Sams to act as a police informant in exchange for the police "helping" him and not filing criminal charges that could have been filed, was relevant and helpful to appellant's defense.

We disagree. Appellant's argument, that questionable conduct by police officers is a proper matter for a jury's consideration in determining whether or not a defendant was entrapped into committing an offense, is correct as far as it goes. *Norman v. State*, 588 S.W.2d 340 (Tex.Cr. App.1979). We fail to see, however, what logical relevance the relationship between the police and Sams bears to the question of whether appellant was entrapped. What-

ever it was that motivated Sams to assist the police in gaining access to appellant, this had no probative value whatsoever as to whether officer Cox acted unlawfully in his dealings with appellant. *Burkhalter v. State*, 493 S.W.2d 214 (Tex.Cr.App.1973), cited by appellant, is not in point. In that case, a witness called by the State was shown to be then under indictment as a principal in the murder for which defendant was on trial as an accomplice. It was held to be reversible error for the trial court to refuse to permit the jury to be told about an agreement between the State and the witness for favorable treatment in the witness' case in exchange for his testimony against the defendant. This suppressed evidence was held by the court to be relevant to the jury's assessment of the witness' credibility, and his motive for testifying as he did. 493 S.W.2d at 218.

Such is not the case here. Sams' credibility was not in issue because he did not testify. The proffered testimony was not relevant to any issue in the case. The trial court's refusal to place such testimony before the jury was proper. The ground of error is overruled.

In his fourth ground of error, appellant again complains of the State's use, in a different context, of his 1968 Minnesota conviction for aggravated forgery. He contends that the State improperly was allowed to impeach his credibility as a witness by asking him in front of the jury about the conviction. This was improper, he argues, because of the order of discharge previously discussed under his second ground of error, and also because the conviction was remote in time.

In a hearing outside the jury's presence, appellant admitted having been convicted on October 22, 1968, of the felony offense of aggravated forgery in Minnesota, and having been sentenced to zero to 10 years' confinement. He was actually imprisoned for approximately 18 months, then was on parole for approximately two years, and then was discharged under the order previously discussed.

 Regarding impeachment of witnesses, the general rule is that a witness by testifying places his credibility in issue, and the opposing party may seek to impeach that credibility by proof that the witness has been convicted previously of any felony offense, or a misdemeanor involving moral turpitude. Even then, however, such offenses must not be so remote in time so as not to be relevant to the present credibility of the witness. 1 R. Ray, Texas Practice—Law of Evidence, § 658 at 587–589 (3d ed. 1980). This rule is supplemented in this state, of course, by the provisions of Article 38.29, V.A.C.C.P. All of the foregoing rules are fully applicable when it is the defendant who is testifying. *Myre v. State*, 545 S.W.2d 820 (Tex.Cr.App.1977).

Appellant erroneously relies on language in Article 38.29, V.A.C.C.P., speaking of the admissibility for impeachment purposes of a conviction "that has not been set aside." He argues that since the conviction in issue had been set aside, its use against appellant for impeachment purposes was improper. Appellant, however, ignores the fact that the quoted language relates to prior convictions in which a suspended sentence has been given. In his testimony, appellant admitted that his sentence had not been suspended or probated. Rather, the conviction was made final, and he served a term of confinement. Thus, the statutory language is inapplicable.

Furthermore, a pardon does not prevent the use of such a conviction for impeachment purposes. *Sipanek v. State*, 100 Tex.Cr.R. 489, 272 S.W. 141 (1925); C. McCormick, Evidence, 87 (2d ed. 1972). Thus, even assuming *arguendo* that the order of discharge constituted a pardon, this would not render the fact of conviction inadmissible. With regard to remoteness, it is the time between the date of release from confinement and the date of the witness' testimony that determines the issue. *Miller v. State*, 549 S.W.2d 402 (Tex.Cr.App. 1977). Here, the record shows that appellant began his sentence on November 22, 1968 and served 18 months of his sentence before release, making the latter date approximately March 22, 1970. Appellant testified on January 12, 1978. The question of remoteness is largely a matter within the discretion of the trial court, although the general rule of thumb is that if the release from confinement is less than 10 years prior, the conviction may be admitted. *Davis v. State*, 545 S.W.2d 147, 150 (Tex.Cr.App. 1976); *Bustillos v. State*, 464 S.W.2d 118 (Tex.Cr.App.1971). We hold that there was no abuse of discretion in the trial court's allowing appellant's credibility to be attacked by use of the 1968 conviction. We note in passing that the trial court's ruling was erroneously based on Article 37.07, V.A.C.C.P., dealing with the prior criminal record of a defendant which may be admitted as evidence at the penalty stage of the trial. This, however, is of no consequence to the fact that the ruling, even if based on the wrong reason, was correct. Appellant's fourth ground of error is overruled.

The judgments are affirmed.