Steven Jerald McCain v. State of Texas















IN THE
TENTH COURT OF APPEALS
 

No. 10-99-348-CR

     STEVEN JERALD McCAIN,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the 66th District Court
Hill County, Texas
Trial Court # 31,436
                                                                                                                
                                                                                                            
DISSENTING OPINION
                                                                                                                
   
      The availability of the writ of habeas corpus has traditionally been restricted to instances
where the trial court’s judgment is void, and cannot be invoked for mere irregularities in the
proceedings. Ex parte Sadberry, 864 S.W.2d 541, 542 (Tex. Crim. App. 1993); see, e.g., Ex
parte Banks, 769 S.W.2d 539, 540 (Tex. Crim. App. 1989) (habeas corpus available only to
review jurisdictional defects or denials of fundamental or constitutional rights). Generally,
claims that are based merely on a state statute will not be considered, and a Texas
constitutional claim may be considered only if the claim is not susceptible to a harmless error
analysis. Ex parte Dutchover, 779 S.W.2d 76, 77-78 (Tex. Crim. App. 1989). Finally, the
writ should not be used to litigate matters which should have been raised on appeal. Ex parte
Sanchez, 918 S.W.2d 526, 527 (Tex. Crim. App. 1996).
      As mentioned above, the fact that a conviction is “void” may be raised in a habeas corpus
proceeding. Heath v. State, 817 S.W.2d 335, 336 (Tex. Crim. App. 1991). The Court of
Criminal Appeals has stated, “[T]he provisions of Article 1.13, and its predecessor Article
10a, are mandatory; before a defendant who has no attorney can agree to waive a jury trial in a
non-capital felony, the court must appoint an attorney to represent him or the resulting
conviction will be void.” Ex parte Ross, 522 S.W.2d 214, 223 (Tex. Crim. App. 1975)
(emphasis added). Article 1.13(c) has not changed, and Ex parte Ross has not been overruled. 
Tex. Code Crim. Proc. Ann. art. 1.13(c) (Vernon Supp. 2000); Ex parte Ross, 522 S.W.2d
at 223.
      Consequently, I would hold that McCain’s attack on his conviction is cognizable in habeas
corpus because it is void. As a result, I would grant McCain’s requested relief. Because the
majority does not, I dissent.
 

                                                                               BILL VANCE
                                                                               Justice

Dissenting opinion delivered and filed July 12, 2000
Publish




an>
      Wisdom and Kathleen Wisdom were married in February 2001. They separated in
September, and Kathleen moved in with Daniel Filkins, her former boyfriend and the father of
her child, T.W.
      On October 31, Melissa Hodges and her two daughters, A.S. and A.L., visited Kathleen. 
Filkins was not at home. When Wisdom came to the home, Kathleen let him in because she
thought he was there to see Filkins about buying a car. Once inside the home, Wisdom pulled
out a pistol and threatened to kill Filkins. He waived the pistol at Kathleen, Hodges, and A.S.
and ordered them to lie down on the floor. Instead, A.S. fled into the garage, and during the
confusion, all the occupants were able to exit the home. Filkins arrived and encountered
Wisdom outside coming toward him with the pistol, threatening him. Wisdom followed
Filkins into the backyard where eight shots were fired, two striking Filkins in the chest and
abdomen. Wisdom threw the pistol into Filkins’s lap and said: “This is what you get for
stealing my wife.”
      Two off-duty police officers were within a few blocks and heard the shots. They went to
the home where they found Wisdom sitting on the tailgate of a pickup. He admitted trying to
kill Filkins.
Procedural Background
      On March 14, 2002, the Thursday before a trial on Monday, March 18, defense counsel
informed a visiting judge at a pretrial conference that she had just received information from
Wisdom’s psychiatrist, Dr. Charles F. Yackulic, that Wisdom was suffering from a severe
mental illness. Wisdom had been treated by Dr. Yackulic at an MHMR facility for depression
and suicidal urges. Counsel filed a “Motion for Continuance” of the trial, which stated that
Wisdom “has been diagnosed with major depression, including suicidal ideation. [He] has also
been diagnosed with psychosis, including hallucinations, both auditory and visual. Attorney
will require a minimum of two months to investigate, explore and evaluate [his] mental state
both at the time of offense, and present. [He] was put on medication by a Psychiatrist in
February 2002, and it will take three months to stabilize [him] on the medication.” Tex.
Code Crim. Proc. Ann. art. 29.03 (Vernon 1989). Attached to the motion was counsel’s
verification swearing to the truthfulness of the motion based on her personal knowledge. In
addition, counsel filed a “Motion for Examination Regarding Incompetency” to stand trial, in
which she requested that an expert be appointed to examine Wisdom and that, if appropriate, a
competency hearing be held. Id. art. 46.02 (Vernon 1979 & Supp. 2004). The visiting judge
orally granted the motion for examination regarding competency to stand trial, appointed its
own expert, Dr. Baker, set the competency hearing for the morning of trial on March 18,
2002, and left the trial setting in place. He said “I’ll leave this Motion for Continuance [and]
let the Judge consider that Monday.”
      On the morning of trial, Wisdom’s counsel filed a “Notice of Intent to Raise Insanity
Defense” under article 46.03, § 2(a). Id. art. 46.03, § 2(a) (Vernon Supp. 2004). Counsel
also filed a “Motion for Examination Regarding Insanity” at the time of the offense under
article 46.03, § 3(a), and requested that an expert of Wisdom’s own choice be appointed to
examine him regarding insanity at the time of the offenses. Id. art. 46.03, § 3(a) (Vernon
Supp. 2004). She specifically asked that Dr. Yackulic be appointed. In addition, Counsel
filed another “Motion for Continuance” of the trial. Attached was counsel’s affidavit stating:
On March 13, 2002, I received a written report from MHMR . . . . The diagnoses
were Major Depressive Disorder, recurrent, severe with Psychotic Features (DSM). 
Medication (Lithium Carbonate, 600 mg. bid) was indicated, and a 90 day treatment
regimen was recommended in order to stabilize [him]. He was also diagnosed
Polysubstance Dependant (DSM), suicide attempts three and two years ago. 
Additionally, Dr. Charles Yackulic, told Defense Counsel, ‘I am not sure that [he]
knew right from wrong at the time of the alleged offense.’ Upon further questioning,
Defense counsel realized that a question of [Wisdom’s] insanity at the time of the
offense had just been introduced by the psychiatrist. Defense Counsel attempted to
subpoena Dr. Yackulic for the March 18, 2002 Competency Exam, and trial as an
expert witness; however, Defense Counsel learned that Dr. Yackulic had left town,
and would be gone on vacation until March 25, 2002.
Id. art. 29.08 (Vernon 1989) (written pre-trial motion must be sworn to by person having
personal knowledge of facts relied on for continuance).
      The trial court held a hearing the morning of March 18 and appointed Dr. Reddy, also a
psychiatrist with MHMR, to conduct an examination that day confined to the insanity-defense
issue. Defense counsel agreed to the examination but did not withdraw any of her motions. 
Meanwhile, the court proceeded to impanel a jury for the competency-to-stand-trial issue. The
competency hearing was held the afternoon of March 18. Dr. Baker was the only witness, and
he testified that Wisdom was not incompetent. The jury returned a verdict finding Wisdom
competent.
      The jury for guilt-innocence was impaneled on March 19, and the trial proceeded the next
day. No additional hearing on the insanity-defense was held, although the clerk’s record
includes a letter from Dr. Reddy stating that Wisdom was not insane at the time of the offense. 
      Wisdom filed a motion for new trial complaining that, because Dr. Yackulic was out of
town during the trial, the jury was not permitted to hear his testimony about Wisdom’s insanity
at the time of the offense. Filed with the motion was an affidavit from Charles F. Yackulic,
M.D., stating:
I served as the court appointed psychiatrist who examined Defendant, David Wisdom
for MHMR, Johnson-Ellis-Navarro Counties in the above-styled and numbered cause for
the County of Johnson, Texas. My observations and findings regarding the insanity
defense of Defendant, David Wisdom, is as follows:
David Wisdom has had a classic history of untreated Manic-Depressive Illness up
until 2/4/2002 when I first evaluated him. Before the tragic events of last year he had no
history of harm towards others, but he had twice in the last three years attempted suicide
through carbon monoxide poisoning. In addition his history of episodic alcoholism was
consistent with the premorbid symptoms of Manic Depressive Illness. He reported no
prior psychiatric care or medication trials.
At the time of his assault with a deadly weapon, by his description, he was in a manic
episode with psychotically impaired judgment. In my meetings with him he continued to
display hypo mania, grandiosity, impaired judgment and pressured speech until
medications, mainly the titration of lithium to therapeutic doses, brought his symptoms
under control in March. At present, his symptoms are well controlled and he understands
that he has a life long illness, which necessitates ongoing medication management.
Lengthy incarceration in my humble opinion would serve no useful purpose to society
and frankly appears to me to be a gross misallocation of the financial resources of the State
of Texas. Mr. Wisdom clearly understands the life long nature of his illness and the need
for ongoing psychiatric care in order to prevent a recurrence of manic episodes where his
judgment becomes grossly impaired. I must emphasize again that in my opinion at the
time of his crime he was in a full-blown manic episode and had no ability to understand
the legal inappropriateness or legal implications of his behavior.

There was no hearing on the motion for new trial.
Application
      Wisdom complains on appeal that the court abused its discretion in refusing to grant his
motion to continue the trial so Dr. Yackulic would be available to testify in support of an
insanity defense. We do not agree with the State that Wisdom waived the complaint by failure
to object to the trial at the hearing the morning of March 18. The record shows that counsel
agreed to the competency hearing but continued to press her request for a delay in the trial so
she could have Wisdom’s mental state more fully examined. Furthermore, the trial court
impliedly considered and denied the motion for continuance by proceeding as it did. Tex. R.
App. P. 33.1(a)(2)(A). Therefore, we will proceed with an analysis of the merits of this issue.
      We also do not agree with the State that Wisdom waived his insanity defense by not timely
filing his notice of insanity defense at least ten days before trial. The ten-day requirement can
be suspended for “good cause.” Tex. Code Crim. Proc. Ann. art. 46.03, § 2(b) (Vernon
Supp. 2004). There is nothing in the record to contradict defense counsel’s assertion that she
did not receive information from MHMR and Dr. Yackulic about Wisdom’s mental condition
until March 13. Nor is there anything in the record to suggest that counsel should have known
about the mental condition earlier. Therefore, the record contains good cause for the untimely
filing of the notice, and the trial court did not deny the insanity defense based on untimeliness
of the notice even though the State called the requirement to his attention. To the contrary, the
court appointed Dr. Reddy to examine Wisdom.
      Motions for continuance are governed by chapter twenty-nine of the Code of Criminal
Procedure. Tex. Code Crim. Proc. Ann. ch. 29 (Vernon 1989 & Supp. 2004). Whether to
grant a motion for continuance is within the discretion of the trial court. Wright v. State, 28
S.W.3d 526, 532 (Tex. Crim. App. 2000); Janecka v. State, 937 S.W.2d 456, 468 (Tex.
Crim. App. 1996); Cates v. State, 72 S.W.3d 681, 692 (Tex. App.—Tyler 2001, no pet.). 
There is an abuse of discretion when the defendant is “actually prejudiced” by the denial of a
continuance. Id. Thus the abuse-of-discretion analysis incorporates a “harm” analysis. 
Examples of prejudice are unfair surprise, inability to effectively cross-examine the State’s
witnesses, and inability to adduce crucial testimony from a potential witness. Tanguma v.
State, 47 S.W.3d 663, 680 (Tex. App.—Corpus Christi 2001, pet. ref’d) (citing Janecka, 937
S.W.2d at 468). However, merely stating a desire for more time to prepare does not
demonstrate prejudice. Id. Finally, a complaint about a denial of a motion for a continuance
based on the absence of a witness must be preserved for appeal through a motion for new trial. 
Tex. Code Crim. Proc. Ann. art. 29.06(6) (Vernon 1989); Taylor v. State, 612 S.W.2d 566,
569 (Tex. Crim. App. 1981); Baker v. State, 467 S.W.2d 428, 429 (Tex. Crim. App. 1971);
Hackleman v. State, 919 S.W.2d 440, 452 (Tex. App.—Austin 1996, pet. ref’d, untimely
filed).
      Without evidence to support it, Wisdom did not pursue an insanity defense at trial. He
did, however, testify. When asked “But you’re not asserting [the insanity] defense, are you?”,
he said “no.” “You knew right from wrong?” “I suppose so, yes, sir.” He also testified, “I
got into that car under the direct orders of God in my mind at the time.” He said he had been
depressed and suicidal in the months before the assaults, and that the day of the assaults he
heard voices telling him to “take care of this problem you’ve been praying about.” He said
God was using him to rid Kathleen of Filkins who was a bad influence in her life. The voice
prompted him to get his pistol and go to Filkins’s home.
      Defense counsel told the trial court before the trial began that Dr. Yackulic would testify
that Wisdom had a severe mental illness which required evaluation of a possible insanity
defense. She further represented that Yackulic was out of town for one week. Although the
trial court appointed Dr. Reddy to examine Wisdom for insanity, that appointment should not
deprive Wisdom of the opportunity to present the defense using his own favorable witness. 
Furthermore, Dr. Yackulic’s post-trial affidavit combined with Wisdom’s own testimony
demonstrates that sufficient evidence exists to raise the insanity issue. That the State could call
Dr. Reddy to testify to the contrary only demonstrates that a potential issue existed for a jury
to resolve.
      The court’s failure to grant the continuance rendered Wisdom “unable to adduce crucial
testimony from a potential witness” about the insanity defense. Tex. Pen. Code Ann. §
8.01(a) (Vernon 2003); Tanguma, 47 S.W.3d at 680. Therefore, Wisdom suffered “actual
prejudice” by the denial of the continuance.


 Wright, 28 S.W.3d at 532.
      Defense counsel had a duty to render effective assistance of counsel by conducting a
complete investigation of all potential defenses so that counsel could make adequate strategic
choices at trial. See Wiggins v. Smith,___ U.S. ___, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)
(in a death penalty case counsel should conduct complete investigation regarding mitigating
factors). By denying the continuance, the trial court effectively thwarted defense counsel’s
attempt to discharge her duty to fully investigate the insanity defense.
      The trial court abused its discretion in not granting the continuance. Wright, 28 S.W.3d at
532. We sustain the issue and do not reach Wisdom’s remaining issues.
 

Conclusion
      Having sustained issue one, we reverse the judgment and remand the cause to the trial
court for further proceedings consistent with this opinion.
 
 
                                                                   BILL VANCE
                                                                   Justice

Before Chief Justice Gray,
      Justice Vance, and
      Justice Reyna



      (Chief Justice Gray dissenting)
Reversed and remanded
Opinion delivered and filed March 31, 2004
Publish

[CRPM]