NO. 07-03-0522-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

JUNE 14, 2005

_____

JOE GONZALES, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2002-400,969; HON. CECIL G. PURYEAR, PRESIDING

_____

Before QUINN, C.J., REAVIS, J., and BOYD, S.J.[1]

In this appeal, appellant Joe Gonzales challenges his conviction of capital murder and the ensuing court-assessed punishment of life imprisonment in the Institutional Division of the Department of Criminal Justice. In doing so, he presents five points for our determination. In those points, he contends: 1) during the State's case-in-chief, the trial court erred in permitting the State to offer evidence of an extraneous offense occurring

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2004).

eight days after the charged capital murder offense; 2) & 3) the evidence was legally and factually insufficient to sustain the conviction of capital murder; 4) the trial court erred when it sustained the State's objection to the admission of Gabriel Gonzales' confession; and 5) the trial court erred when it refused to give appellant a continuance because it deprived him of the right to present a witness in his favor. Disagreeing that reversal is required, we affirm the judgment of the trial court.

The State's evidence showed that on August 14, 2002, appellant and his cousin Gabriel Gonzales decided to commit a robbery. In the course of implementing that decision, appellant drove his vehicle while Gabriel looked for potential victims. After Gabriel pointed out several potential victims that appellant rejected, Gabriel selected Colin Schafer as the intended target of the robbery. Carrying a 9 mm semiautomatic rifle, Gabriel stepped out of the vehicle, confronted Schafer, and demanded money. When Schafer could not produce any, Gabriel entered Schafer's car and ordered him to proceed to an ATM machine to withdraw money. Appellant followed in his car. After Schafer delivered $300 to Gabriel, Gabriel shot Schafer twice, returned to appellant's car, and left Schafer to die.

Eight days after the robbery, appellant and Gabriel were at a residence where appellant became involved in a fight. After the fight, the pair waited outside the residence. Gabriel took the 9 mm rifle from appellant's car, handed it to appellant, and encouraged him to fire into the residence. Before leaving the area, appellant fired four rounds into the residence. During the course of investigating the second shooting, a police officer, noting

2

the similarities between the Schafer murder and the shooting, informed the officer investigating the Schafer murder of a possible connection between the two.

The police compared the shell casings from both incidents and concluded that the same gun was involved in both of them. By identifying the suspects in the second shooting, the police obtained a search warrant and conducted a search of appellant's home. In conducting the search, the police discovered a 9 mm rifle, as well as the remnants of a partially burned wallet in the fireplace of appellant's residence. Among the ashes in the fireplace was a partially burned insurance card for Susan Schafer, Colin's mother. Appellant and Gabriel were arrested and both of them gave statements incriminating themselves in the robbery-murder of Colin Schafer.

Reiterated, in his first point, appellant contends the trial court reversibly erred in admitting evidence concerning the shooting incident that occurred eight days after the murder in question here. He argues that the State improperly offered the evidence to demonstrate appellant's general bad character in violation of the Texas Rules of Evidence.

Parenthetically, the State contends appellant did not properly preserve this question for appellate review. The gist of that contention arises out of a preliminary hearing, the subject of which, the trial court announced, was "evidentiary matters." Defense counsel objected to the consideration of the balancing test necessary for the trial court to perform in determining the admissibility of the extraneous offense because the question was not "ripe."

However, the trial court stated that its purpose in calling the hearing was to consider "the question of whether or not [the extraneous offense is] probative or not and whether or not the extraneous offense carries more prejudice than probative value. . . ." At the conclusion of the hearing, and after hearing testimony, the court announced, "[M]y preliminary ruling is that this matter is not overly prejudicial, it is probative of the facts of the capital murder in this case, and that as such, the Court is going to allow the matter to be proffered before the jury." When the State tendered the testimony at trial, defense counsel told the court that he was rearguing the objection that was raised at the preliminary hearing. That objection was overruled, and appellant was given a running objection to the testimony.

The State argues that the only objection made by defense counsel at the hearing was that the hearing was premature and counsel's reference to his objection at the preliminary hearing "was insufficiently specific to preserve error concerning Appellant's complaints on appeal." We disagree. The record is sufficient to show the trial court was well aware of the basis of appellant's objection and continued to believe the evidence was admissible. Thus, the question has been preserved for our appellate review.

The nature of appellant's first point requires us to review the pertinent portions of the applicable Rules of Evidence. Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex. R. Evid. 401. Rule 402 provides: "All relevant evidence is admissible, except as otherwise provided by . . . these rules, . . . ." Tex. R. Evid. 402. Rule 403 provides that although

4

relevant, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Tex. R. Evid. 403. Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Tex. R. Evid. 404(b). It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, and identity. *Id.*

We review a trial court's decision on the admission or exclusion of evidence by an abuse of discretion standard. *See Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990). The determination of the admissibility of evidence is a multi-step process. First, the trial court is required to decide whether the evidence to be introduced is relevant to the proceedings. *Id.* at 375. If the evidence is deemed relevant, it is admissible unless it is excluded by a constitutional, statutory, or evidentiary provision. *Id.* at 376. Even if the evidence is relevant and otherwise admissible, it may still be excluded if its prejudicial effect substantially outweighs its probative value. *Id.* at 377.

In this case, the police had no leads or suspects in Schafer's murder. It was not until after the second shooting that the police were able to identify potential suspects. That being so, the extraneous offense was relevant to the development of the case. However, although it may be relevant, the extraneous offense would not have been admissible as character evidence to show appellant's character traits such as violent behavior or tendency to use deadly weapons, Tex. R. Evid. 404(b), and the burden was on the State to establish another legitimate reason for admission of the second shooting evidence. *See Russell v. State*, 113 S.W.3d 530, 535 (Tex. App.–Fort Worth 2003, pet. ref'd).

5

In this case, the State was required to prove that appellant had intent and acted to promote, encourage, solicit, direct, aid, or attempt to aid in Schafer's murder. *Id.* at 536. Here, the State needed the evidence to show the development of the police investigation leading to the suspects, as well as to show that appellant intended to use or had knowledge that the weapon was intended to be used in a crime such as the one that led to Schafer's death. The extraneous evidence was clearly probative to show appellant's participation in the robbery that led to Schafer's death.

We next consider whether the evidence's probative value outweighed its prejudicial effect. In examining the record, we note that although the offense in chief dealt with the emotional issue of the death of a Texas Tech student and included photographs of the scene and the autopsy of Schafer's body, evidence relating to the extraneous offense was presented almost matter-of-factly. Two witnesses testified to the actual shooting and identified appellant as a suspect in that shooting. Two police officers testified as to the investigations of the separate offenses and the possible link between them. A firearm examiner testified to ballistic examinations on shell casings that connected the two shooting incidents to the same rifle. Testimony relating to the second shooting did not involve any injury and no disturbing photographs or emotional testimony was introduced in that regard. Thus, we conclude that the evidence relating to the second shooting had very little potential to impress the trial jury in an irrational or indelible manner. Out of the some 450 pages of testimony, only 80 pages were related to the extraneous offense.

A majority of the testimony related to the extraneous offense was focused on the development of the identification of the suspects, the similarities between the two offenses,

6

and the ballistic comparison between weapons used in the two offenses. Indeed, the testimony was, in the main, focused on the difficulty the police were having identifying suspects in the murder until the discovery of the spent cartridges found at the scene of the second shooting. There was very little testimony relating to appellant or his character.

With regard to intent and identity, the jury could reasonably consider the testimony that appellant fired a rifle at a residence with Gabriel's encouragement to infer that appellant knew or should have known that Gabriel was willing to use the gun against Schafer. The jury could also have considered the testimony concerning appellant's use of the 9 mm rifle as evidence that appellant had intent to kill. *See Mercado v. State*, 718 S.W.2d 291, 295 (Tex. Crim. App. 1986). Whether appellant had knowledge or intent to participate in Schafer's murder was directly at issue in this case.

In summary, for the reasons we have iterated, the State met its burden to demonstrate that the evidence was relevant and that its probative value exceeded its prejudicial effect. Appellant's first point is overruled.

Because it also concerns the admissibility of evidence, we next consider appellant's fourth point. In that point, he contends the trial court reversibly erred in excluding Gabriel's written statement. In supporting that theory, appellant contends that the confession was admissible as a statement against interest. In relevant part, Rule 803(24) provides that a statement that at the time of its making is so far contrary to the declarant's interest as to tend to subject the declarant to criminal liability is not excluded by the hearsay rule even if the declarant is available as a witness. Tex. R. Evid. 803(24). However, it further

7

specifically provides that in criminal cases, "a statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." *Id.* In that connection, although the trial court ruled that the entire confession was not admissible, it did allow appellant to explore any portion of Gabriel's statement so long as those portions were corroborated by other evidence.

A trial judge's evidentiary ruling will be affirmed if the trial court follows the appropriate analysis and balancing factors. *See Montgomery v. State*, 810 S.W.2d at 380. Under this record, the trial court did not abuse its discretion in making its ruling. Appellant's fourth issue is overruled.

In his second and third points, appellant contends the evidence is legally and factually insufficient to sustain his conviction of capital murder. In particular, he argues that even if the evidence was sufficient to show he agreed to assist Gabriel in a robbery, he had no intention of killing the victim and the evidence was not sufficient to establish that essential element of his conviction.

Evidence is legally sufficient if, viewed in the light most favorable to the jury's verdict, a rational jury could find the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Clewis v. State*, 922 S.W.2d 126, 132 (Tex. Crim. App. 1996). Evidence is factually sufficient if, when all of the evidence is considered in a neutral light, a rational jury can make a finding of guilt beyond a reasonable doubt. *See Zuniga v. State,* 144 S.W.3d 477, 484 (Tex. Crim. App. 2004).

8

In these two challenges, as we have noted, appellant only disputes the sufficiency of the evidence to establish whether he intended to aid or assist in causing Schafer's death. For the purpose of this discussion, we will assume, *arguendo*, that appellant is correct in contending that his statement is the only evidence demonstrating his intent. We will first consider his statement in a light most favorable to the verdict. In that statement, appellant indicates that he was aware that Gabriel had and used a weapon during the commission of robbing Schafer. He also indicates that he urged Gabriel to hurry up and never attempted to dissuade Gabriel from using violence during the commission of the robbery. Although appellant expresses fear of getting caught, his statement does not reveal anything showing that the murder was unexpected. In his statement, appellant also describes that after the shooting, he urged Gabriel to "come on" and he drove Gabriel away from the murder site. He further describes how he helped Gabriel burn Schafer's wallet by providing hair spray as a means to help destroy evidence of the crime. In sum, viewing appellant's statement in a light most favorable to the verdict, a rational jury could have found the essential elements of the capital murder of Schafer beyond a reasonable doubt.

In considering the factual sufficiency question, the jury could have considered the evidence against Gabriel as reducing appellant's role in the incident and could have considered it as minimizing appellant's knowledge of the murder. Even so, in addition to this testimony, the jury also heard that appellant owned the rifle used in the robbery, provided and drove the getaway car, possibly profited from the proceeds of the robbery, and assisted in the destruction of evidence. Intent is generally a fact question to be determined by the jury. *Robles v. State*, 664 S.W.2d 91, 94 (Tex. Crim. App. 1984). Intent

9

may be inferred from the words and conduct of an accused. *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991), *overruled in part on other grounds by Fuller v. State,* 829 S.W.2d 191 (Tex. Crim. App. 1992). After reviewing the evidence *in toto*, and in a neutral light, we conclude that a rational jury had sufficient evidence to conclude that appellant was guilty beyond a reasonable doubt. Because the evidence is legally and factually sufficient to support the jury's verdict, we overrule appellant's second and third points.

Finally, as we have noted, in his fifth point, appellant contends the trial court reversibly erred in denying his motion for continuance because the denial deprived him of his right to present a witness in his favor. In support of that proposition, he argues that through no fault of his own, Gabriel was not available to testify at his trial but would have been available within two days thereafter.

In considering a trial court's ruling on a continuance motion, an appellate court reviews the trial court's action by an abuse of discretion standard. *Heiselbetz v. State*, 906 S.W.2d 500, 511 (Tex. Crim. App. 1995). To establish an abuse of discretion, an appellant must show that the denial resulted in actual prejudice and harm to him or her. *Id.* Here, in his motion seeking continuance, appellant recites the situation leading to the request for the continuance with the conclusory statements that the continuance was necessary "to ensure the Defendant's 6th amendment [right] for compulsory process, for right to effective assistance of counsel, his right to confront and cross-examination [of a] witness, his right to a fair trial, and his due process rights under the 4th, 5th, 6th, and 14th amendments to the U.S. Constitution and Art. 1, sec.10 of the Texas Constitution." In this case, the record

10

supports the conclusion that defense counsel did not attempt to timely locate the missing witness and the motion for continuance was not actually filed until well into the course of the trial. Moreover, although he asserts the missing witness's testimony would have "bolstered" his defense, he does not assert the testimony would have been crucial or unique. The Court of Criminal Appeals has stated that mere desire to have more time to prepare does not establish an abuse of discretion. *Id.* at 512. Additionally, although a motion for new trial was filed, nowhere in the motion was a complaint made of the failure to grant the motion for continuance. In *Taylor v. State*, 612 S.W.2d 566, 569 (Tex. Crim. App. 1981), the court stated that the only means of preserving error in the overruling of a motion for continuance due to an absent witness is a motion for new trial. Appellant's fifth point is overruled.

In summary, all of appellant's points are overruled, and the judgment of the trial court affirmed.

Per Curiam

Do not publish.